IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**MARVELL BUCKLEY**                                                                                 **PLAINTIFF**

**VERSUS**                                             **CIVIL ACTION NO. 1:22-cv-00260-BWR**

**FLOYD SPOTTS**                                                                **DEFENDANT**

**MEMORANDUM OPINION AND ORDER OF DISMISSAL**

*Pro se* Plaintiff Marvell Buckley is a post-conviction inmate in the custody of the Mississippi Department of Corrections ("MDOC") presently being housed at the South Mississippi Correctional Institution ("SMCI") in Leakesville, Mississippi. Compl. [1] at 2, 4. He filed this civil action against Defendant Floyd Spotts under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging unconstitutional conditions of confinement at SMCI. *Id.* at 3-5; Order [19]. Buckley is proceeding *in forma pauperis*. Order [11].

The Court held an Omnibus Hearing on December 13, 2023, to give Buckley a chance to clarify his claims. *See Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985) (authorizing the magistrate judge to "hold an evidentiary hearing" to allow a *pro se* plaintiff to provide a "more definite statement") (quotation omitted), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319, 324 n.3 (1989). On December 27, 2023, Warden Spotts filed a Motion [41] for Summary Judgment Based on Failure to Exhaust Administrative Remedies. On January 19, 2024, Buckley filed a Letter Motion [44] for Compensation Payment of $3500, which the Court will construe as

his summary-judgment response.[1]  For the following reasons, the Court finds that Warden Spotts's Motion [41] for Summary Judgment should be granted and this civil action dismissed without prejudice.

## I.  BACKGROUND

### A. Buckley's Allegations

Buckley seeks compensatory damages of $50,000.00 to $100,000.00 and "a very early release," Compl. [1] at 5, because of the "unsanitary living conditions" at SMCI, *id.* at 4.  From March 2022, when he arrived at SMCI, Buckley noticed "black mold on [the] walls" and "on trays" at the facility.  *Id.* at 4-5.  He was diagnosed with COPD two weeks before filing his Complaint on September 21, 2022, and he speculates that his condition "may be due to black mold."  *Id.* at 5.  Buckley testified that he is no longer housed in the unit where black mold is present.

Buckley also claims that there has been "standing water in [the] shower since July 2022."  *Id.* at 4.  As a result, he previously had "to stand and shower in [the] dirty water of over 90 inmates."  *Id.* at 5.  Because the standing water is allegedly stagnant and contains sewerage, Buckley now "stand[s] on wooden [palettes] to shower."  *Id.* at 4-5.  He once fell off the palette and into the dirty water, which allegedly caused "itching" and "burning" sensations on his feet, along with

---

[1] The pleadings of a *pro se* litigant are liberally construed. *Collins v. Dallas Leadership Found.*, 77 F.4th 327, 330 (5th Cir. 2023).  Buckley's Letter Motion [44] was filed on the very day prescribed for his summary-judgment response, *see* Order [43] at 3, and it addresses matters at issue in this lawsuit—*e.g.*, "mold . . . on the walls" and him "falling in the [dirty] water" in the showers at SMCI, Mot. [44] at 1.  Thus, though effectively a settlement demand, the Court will construe Buckley's Letter Motion [44] as his summary-judgment response.

2

"discoloration of [his] toe nails." *Id.* at 5. Buckley saw a doctor about these conditions on September 3, 2022, but he was told simply to "file paperwork [because the] water caused it." *Id.* Buckley testified that he was given some "cream" to apply to his feet, but that treatment was unsuccessful. Buckley did not follow up with medical providers at SMCI to pursue additional treatment methods.

Buckley also testified that he talked to staff at SMCI about "the water situation," but it was not ultimately rectified. Allegedly, prison staff drilled holes in the concrete to promote drainage, but the showers never fully emptied of standing water. Finally, Buckley believes that staff at SMCI have retaliated against him for filing this lawsuit by withholding favorable housing assignments. *See* Mot. [25].

### B. Buckley's Administrative Grievance

Buckley alleged in his Complaint that he filed an administrative grievance about the conditions of confinement at SMCI, including the black mold and standing water in the bathrooms. Compl. [1] at 6-7. In support of his Motion [41] for Summary Judgment, Warden Spotts submitted the affidavit of Joseph Cooley, an Investigator for MDOC's Administrative Remedy Program ("ARP") at SMCI. Mot. [41-1] at 1. Investigator Cooley testified that Buckley "did not submit a grievance to the [ARP] prior to September 8, 2022." *Id.* His only grievance available in this record, filed on September 8, "concerned smoking in the housing unit and the relief he requested was to be moved to a non-smoking unit." *Id.* That grievance reads in full:

Administrative Remedy
Dear Warden or Major

> I am now writing you in regard to health issues I am having 2 to 3 weeks ago[.] [I] have been diagnoised [sic] with COPD smoking inviorments [sic] or black mold in the showers has caused my health to become a hazzard [sic] I am writing in hopes that I can be transfered [sic] to a non smoking building Unit-8 I hope that their [sic] is a way to help me with returning to my kids & grandkids
> on record in medical . . .

*Id.* at 3. Buckley filed this lawsuit on September 21, 2022, Compl. [1]—thirteen days later.

Someone named Melinda Hayes provided Buckley's first-step response on October 31, 2022. Mot. [41-1] at 4. She wrote: "U-8 no longer has smoke free building in Area 1." *Id*. Buckley received the first-step response on November 14, 2022, *id*. at 5, but he "did not proceed to the second step of the appeal process," *id*. at 1.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quotation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quotation omitted). "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007).

"Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues." *Id.* "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges its initial burden of demonstrating entitlement to summary judgment." *Mack v. Waffle House, Inc.*, No. 1:06-cv-00559-RHW, 2007 WL 1153116, at *1 (S.D. Miss. Apr. 18, 2007) (quotation and brackets omitted). "[O]nce a properly supported motion for summary judgment is presented, the nonmoving party must rebut with 'significant probative' evidence." *Id.* (quoting *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978)). "Summary judgment is appropriate, therefore, if the nonmovant fails to set forth specific facts, by affidavits or otherwise, to show there is a genuine issue for trial." *Topalian*, 954 F.2d at 1132.

## III.   DISCUSSION

### A. The Prison Litigation Reform Act ("PLRA")

Exhaustion of administrative remedies through the prison grievance system is a prerequisite for lawsuits filed under § 1983. *Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir. 2001); *see also* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in a jail, prison, or other correctional facility until such

5

administrative remedies as are available are exhausted."). "Since exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010).

"Exhaustion is mandatory for 'all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Alexander v. Tippah Cnty.*, 351 F.3d 626, 630 (5th Cir. 2003) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). The Fifth Circuit takes a "strict approach" to the exhaustion requirement. *Flores v. Lappin*, 580 F. App'x 248, 249 (5th Cir. 2014) (quotation omitted). "Under this strict approach, mere substantial compliance with administrative remedy procedures does not satisfy exhaustion; instead, prisoners must exhaust available remedies properly." *Id.* (quotations omitted).

Dismissal is mandatory where an inmate has failed to properly exhaust the applicable administrative grievance procedure before filing his complaint. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012); *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford*, 548 U.S. at 83-84. "Merely initiating the grievance process or putting

6

prison officials on notice of a complaint is insufficient to meet the exhaustion requirement." *Evans v. Harrison Cnty. Adult Det. Ctr.*, No. 1:18-cv-00087-RHW, 2020 WL 980149, at *1 (S.D. Miss. Feb. 28, 2020). Instead, "[t]he grievance process must be carried through to its conclusion before suit can be filed under the [PLRA]." *Id.*

A properly exhausted claim has "complete[d] the administrative review process in accordance with the applicable procedural rules." *Woodford*, 548 U.S. at 88. Those rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*; *see also Woodford*, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules.").

**B. Analysis**

Warden Spotts attached a copy of MDOC's "Grievance Procedures" to his Motion [41]. These procedures outline the two-step administrative-grievance process through which inmates may raise formal complaints about their conditions of confinement. Mot. [41-2] at 3-5. The Fifth Circuit Court of Appeals has summarized the procedure as follows:

> An inmate must file a grievance within 30 days of the complained-of incident. . . . The grievance is reviewed by the prison's legal-claims adjudicator and, if there is an adverse response at the first step, the inmate may proceed to step two. . . . If the inmate disagrees with the

7

step-two response, he may sue.

*Wheater v. Shaw*, 719 F. App'x 367, 369-70 (5th Cir. 2018). The ARP was implemented under the authority of Mississippi Code § 47-5-801, and the two-step version of the program received court approval in 2010. *Smith v. Tripplett*, No. 3:14-cv-00078-LRA, 2016 WL 900574, at *2 (S.D. Miss. Mar. 8, 2016) (citing *Gates v. Barbour*, No. 4:71-cv-00006-JAD (N.D. Miss. Aug. 19, 2010) (Doc. 1242)).

The evidence supporting Warden Spotts's Motion [41] shows that Buckley failed to exhaust his administrative remedies with respect to any of his claims before filing this lawsuit. Buckley's sole administrative grievance, filed on September 8, 2022, raised the issue of "black mold in the showers." Mot. [41-1] at 3. But he filed this lawsuit less than two weeks later—on September 21, 2022, Compl. [1]—long before receiving his first-step response on November 14, 2022, Mot. [41-1] at 5. "Exhaustion must be completed prior to filing suit; it may not be excused if exhaustion is achieved while the suit is pending." *Patterson v. Stanley*, 547 F. App'x 510, 512 (5th Cir. 2013).

The Court acknowledges that Buckley's first-step response came more than forty days after he filed his administrative grievance, in violation of MDOC's administrative-grievance procedure. Mot. [41-2] at 5 ("The First Step Respondent will respond to the offender within 40 days from the date the request is received at the First Step."). Again, though, Buckley filed this lawsuit thirteen days after filing his administrative grievance; he did not give his custodians sufficient time to provide

8

a response.  In any event, Buckley did not complete the ARP by "proceed[ing] to the second step of the appeal process."  Mot. [41-1] at 1.  Warden Spotts has thus carried his initial summary-judgment burden of demonstrating his entitlement to judgment as a matter of law based on Buckley's failure to exhaust administrative remedies.  *See Lane v. Doe*, 399 F. App'x 964, 965 (5th Cir. 2010) (affirming summary judgment based on failure to exhaust administrative remedies where the movant's evidence "establish[ed] beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in his favor" (quotation omitted)).

Buckley does not dispute this evidence.  Instead, he seems to insinuate that the Court should excuse his failure to exhaust administrative remedies because Warden Spotts does not "deny that these things happen" at SMCI, particularly the "mold . . . on the walls" and him "falling in the [dirty] water" in the showers.  Mot. [44] at 1.  But this Court lacks the discretion to excuse a failure to exhaust administrative remedies.  *Woodford*, 548 U.S. at 85.  And Buckley has otherwise adduced no documentary evidence to show that he in fact exhausted his administrative remedies with respect to these claims before filing this lawsuit.  In other words, Buckley has not carried his burden as non-movant of "go[ing] beyond the pleadings and designat[ing] specific facts showing that there is a genuine issue for trial."  *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Warden Spotts's Motion [41] must be granted because Buckley has not presented sufficient information to show that he properly exhausted administrative

9

remedies with regard to the claims he raises in this case. *See, e.g., id.* at 1076; *see also Ellis v. Shaw*, No. 5:14-cv-00103-MTP, 2016 WL 796131, at *3 (S.D. Miss. Feb. 26, 2016).

## IV. CONCLUSION

Having thoroughly reviewed and liberally construed Buckley's pleadings and testimony, along with the pending Motion [41], the Court finds that Buckley's Complaint should be dismissed without prejudice based on his failure to exhaust administrative remedies before filing this lawsuit.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Defendant Warden Floyd Spotts's Motion [41] for Summary Judgment Based on Failure to Exhaust Administrative Remedies is **GRANTED**. This civil action is **DISMISSED WITHOUT PREJUDICE**. A separate final judgment will be entered under Federal Rule of Civil Procedure 58.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that Plaintiff Marvell Buckley's Letter Motion [44] for Compensation Payment of $3500 is **DENIED AS MOOT**.

**SO ORDERED AND ADJUDGED,** this 31st day of May, 2024.

*s/ Bradley W. Rath*
BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE